IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AIR FORCE OFFICER | : | |
| *Plaintiff* | : | Case No.: 22-cv-1267 BAH |
| v. | : | |
| | : | |
| LLOYD J. AUSTIN, III, in his | : | |
| official capacity as Secretary of Defense; | : | |
| FRANK KENDALL, III, in his | : | |
| official capacity as Secretary of the Air Force; | : | |
| ROBERT I. MILLER, in his | : | |
| official capacity as Surgeon General of the | : | |
| Air Force, and | : | |
| RUDOLF WILHELM KUEHNE, JR. | : | |
| in his official capacity as Commander, | : | |
| Air Force Flight Standards Agency | : | |
| | : | |
| *Defendants* | : | |

**PLAINITFF AIR FORCE OFFICER'S MEMORANDUM OF LAW IN SUPPORT OF
THE MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..........................................................................................iv

INTRODUCTION ........................................................................................................1

STATEMENT OF FACTS ............................................................................................3

ARGUMENTS ............................................................................................................6

I. Standard for Issuing a Preliminary Injunction ...........................................................6

A.  Plaintiff is likely to succeed on the Merits that the Mandates Violate RFRA and
    The First Amendment......................................................................................6

   1.  The Vaccine Mandates are subject to strict scrutiny because they impose
       a substantial burden on Plaintiff's Officer's sincerely held religious beliefs...............6

   2.  The Vaccine Mandates are not generally applicable; hence they are
       subject to strict scrutiny under the First Amendment...........................................9

   3.  The Vaccine Mandate fail strict scrutiny under RFRA and the First
       Amendment................................................................................11

      a.  Defendants are unlikely to establish that the Mandates are supported by a
          compelling government interest............................................................11

      b.  Defendants are unlikely to establish that the Mandates are the least restrictive
          means of achieving any interest...........................................................14

B. Plaintiff Officer is likely to succeed on the merits on the claim that the Vaccine
   Mandates violate the Administrative Procedures Act...............................................15

C. Plaintiff is likely to succeed on the merits that the Mandates violate the Equal
   Protection and Due Process Clause of the Fifth Amendment......................................16

D. Plaintiff has established the remaining factors necessary to warrant emergency
   relief...........................................................................................19

   1. The Mandates cause irreparable harm..........................................................19

   2. The public interest and balance of harms weigh in favor of an injunction...............21

II. CONCLUSION......................................................................................21

CERTIFICATE OF SERVICE ....................................................................................................22

# TABLE OF AUTHORITIES

**Cases**                                                                   **Page(s)**

Aamer v. Obama, 742 F.3d 1023, 1038 (D.C. Cir. 2014)............................................6

Abbott Labs. v. Gardner, 387 U.S. 136, 152-53 (1967)............................................2

Air Force Officer v. Austin, et al., Civil Action No. 5:22-cv-00009-TES (M.D. Ga.)......1

Air Force Officer v. Austin, 2022 U.S. Dist. LEXIS 26660, at *32-33..................... 20

Bennet v. Spear, 520 U.S. 154, 162 (1997)................................................... 2

Bolling v. Sharpe, 347 U.S. 497, 499 (1954)...................................................2,16

Burwell v. Hobby Lobby Stores, Inc., 573 U.S. 682, 706 (2014)...............1,7,8,12,14,19

Church of Lukumi Babalu Aye, Inc. v. Hialeah, 508 U.S. 520, 531-32 (1993)...........10

City of Boerne v. Flores, 521 U.S. 507, 534 (1997)............................................11

City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).......................16

Dahl v. Bd. of Trustees of W. Michigan Univ., 2021 WL 4618519 at *6 (6th Cir. 2021)

.......................................................................................................20,21

Davila v. Gladden, 777 F.3d 1198, 1206 (2015)..................................................12

Davis v. District of Columbia, 158 F.3d 1342, 1346, 332 U.S. App. D.C. 436 (D.C. Cir.

1998) ...............................................................................................20

Dunn v. Blumstein, 405 U.S. 330, 343 (1972)..................................................14

Elrod v. Burns, 427 U.S. 347, 373 (1976)...................................................19,20

Employment Division v. Smith, 494 U.S. 872, 879-81 (1990)...............................10

Fulton v. City of Phila., --- U.S. ----, 141 S. Ct. 1868, 1877 (2021)......  1,8,10,11,12,14

Gilligan v. Morgan, 413 U.S. 10 (1973)...........................................................1

Gonzales v. O Centro Espírita Beneficente União do Vegetal, 546 U.S. 418, 429 (2006)

................................................................................................................11,12

Gordon v. Holder, 721 F.3d 638, 653 (D.C. Cir. 2013).........................................21

Grannis v. Ordean, 234 U.S. 385, 394 (1914)......................................................17

Goldberg v. Kelly, 397 U.S. 254, 262 (1970).......................................................17

Holt v. Hobbs, 574 U.S. 352, 361 (2015)..........................................................8,12

Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 168, (1951)...........18

Jones v. Washington, No. 2:21-CV-12375, 2021 WL 6063626..............................15

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)....................................2,8

Mathews v. Eldridge, 424 U.S. 319, 332 (1976).......................................... 17,18

Missouri v. Biden, No. 4:21-CV-01329-MTS, 2021, WL 5564501..........................15

Navy SEAL 1 v. Biden, 2021 WL 5448970, at *28 (M.D. Fla. Nov. 22, 2021)...8,9,11,13

Navy SEALs v. Biden, No. 4:21-CV-01236-0, 2022 WL 34443 at *10 (N.D. Tex

Jan 3, 2022)...................................................................................................12

Raymond v. Chi. Union Traction Co., 207 U.S. 20, 35-36 (1907).........................  17

Roberts v. Neace, 958 F.3d 409, 414 (6th Cir. 2020)...........................................11

Roman Catholic Diocese of Brooklyn v. Cuomo, 141 S.Ct. 63, 67 (2020)..............11,19

Scott v. Roberts, 612 F.3d 1279, 1297 (11th Cir. 2010)................................  20,21

Sherbert v. Verner, 374 U.S. 398, 404 (1963)............................................. 8,9,10

Singh v. McHugh, 109 F.Supp.3d 72, 87 (D.D.C. 2016)..................................8,9,14

Tandon v. Newsom, 141 S.Ct. 1294, 1296 (2021)....................................  10,11,12

Texas v. Becerra, 2021 WL 5964687.................................................................15

Thomas v. Review Bd., 450 U.S. 707, 715 (1981)............................................ .......8

United States v. Adcock, 65 M.J. 18, 24 n.6 (C.A.A.F. 2007)................................16

United States v. Friday, 525 F.3d 938, 951 (10th Cir. 2008)....................................9

Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)............................6

**Statutes**

Religious Freedom Restoration Act of 1993, 42 U.S. Code § 2000bb et seq
.............................................................. 1,2,6,7,8,9,11,12,14,18,19,21

5 U.S.C. §704.................................................................................2

5 U.S.C. §702.................................................................................2

5 U.S.C. § 706(2)(A)(B)(D)...............................................................2,15

86 Fed. Reg.at 61,604...............................................................13,15,16

**Other**

First Amendment to the U.S. Constitution.....................................1,6,12,18,19,20

Fifth Amendment to the U.S. Constitution...............................................2,17,21

Fourteenth Amendment to U.S. Constitution..................................................17

INTRODUCTION

"It is this power of oversight and control of military force by elected representatives and officials which underlies our entire constitutional system." Gilligan v. Morgan, 413 U.S. 1, 10 (1973). One such elected representative, then Rep. Charles E. Schumer [D-NY-9] in the 103rd Congress (1993-1994), introduced H.R.1308, titled the Religious Freedom Restoration Act of 1993. Introduced on March 11, 1993, the bill became the law of the land on November 16, 1993. The Bill had 170 cosponsors and bipartisan support. The Religious Freedom Restoration Act of 1993 ("RFRA") was passed "to provide very broad protection for religious liberty." Burwell v. Hobby Lobby Stores, Inc., 573 U.S. 682, 706 (2014). Congress, in enacting the RFRA, went far beyond what had been constitutionally required by the United States Supreme Court prior to this law. Ibid. The RFRA applies to the United States Military. "[T]he term 'government' includes a branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States, or of a covered entity[.]" 42 U.S.C. § 2000bb-2(1).

Similarly, the First Amendment to the U.S. Constitution, provides and protects the free exercise of religion, and requires strict scrutiny. Whereas here, the vaccine requirement of the Air Force is not generally applicable. "A law [,]" or in this case a vaccination requirement, "is not generally applicable if it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions." See Air Force Officer v. Austin, et al., Civil Action No. 5:22-cv-00009-TES (M.D. Ga.) citing Fulton v. City of Phila., --- U.S. ----, 141 S. Ct. 1868, 1877 (2021).

The Administrative Procedure Act ("APA") states that a court shall "hold unlawful and set aside" any agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "contrary to constitutional right, power, privilege, or immunity "or

"without observance of procedure required by law." 5 U.S.C. § 706(2)(A)(B), (D). The Air Force is subject to the requirements of the APA. *See* 5 U.S.C. §702. The Defendants' action in denying the Plaintiff Officer's request for a religious accommodation is a final agency decision subject to judicial review because there is no other adequate remedy in a court of law. 5 U.S.C. §704. The injury in fact to Plaintiff Officer is fairly traceable to the actions of the Defendants. Bennet v. Spear, 520 U.S. 154, 162 (1997). It is not required that the Plaintiff Officer await enforcement of the final decision by the Defendants prior to bringing an action under the APA. *See, e.g.,* Abbott Labs. v. Gardner, 387 U.S. 136, 152-53 (1967). A decision by the Court favorable to Plaintiff Officer will redress the injury complained of in the Complaint.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).

Retaliation requires (1) protected activity: "participation" in an EEO process or "opposition" to discrimination, such as the RFRA herein, whereas Plaintiff Officer sought a religious accommodation for a sincerely held religious belief; (2) materially adverse action taken by the employer, namely, the Defendants actions to thwart the Plaintiff Officer's promotion to Major; and, (3) requisite level of causal connection between the protected activity and the materially adverse action – Defendants have taken the action in direct response to Plaintiff Officer's pursuit of a religious accommodation under the RFRA.

The Due Process and Equal Protection claim arise out of the Fifth Amendment because the Defendants are agents of the federal government. *See e.g.,* Bolling v. Sharpe, 347 U.S. 497, 499 (1954). The process established by the Air Force to review requests for religious accommodations is procedurally unfair and not impartial. The process denies Plaintiff Officer a fair opportunity to continue his career and advancement as an Air Force Officer.

STATEMENT OF FACTS

Plaintiff Officer continues to serve his Country and is desirous of continuing his career in the United States Air Force. To date, he continues to fulfill his obligations and work assignments, serving honorably. In fact, Plaintiff Officer was selected for promotion to Major. Sadly, his pursuit of a religious accommodation triggered his commanding officer, Defendant Rudolf Wilhelm Kuehne, to pursue a course of action designed on preventing the promotion slated for May 1, 2022 and deny Plaintiff Officer of additional pay and benefits associated with such a promotion. The Defendants have the Plaintiff Officer in an expedited path to separation from the Air Force, including the prospect of trial by court-martial, and exposure to a federal criminal conviction with jail time.

Regrettably, Plaintiff Officer's earnest pursuit of a religious accommodation, based upon a sincerely held religious belief, has run headfirst into the Defendants' equally steadfast intent on denying these requests.

Well before the Vaccine Mandate at issue, Plaintiff Officer submitted a formal request for a religious accommodation to the Air Force immunization requirement on June 1, 2020. (EXHIBIT A, *redacted*). No action was taken by the Air Force nor was the request denied. Following the issuance of the Vaccine Mandate[1], Plaintiff Officer again submitted a request for an accommodation, dated August 31, 2021. (EXHIBIT B, *redacted*)., Plaintiff Officer met with the Air Base Wing Chaplain and Medical Group. This meeting was part of the advertised

---

[1] Mem. for Senior Pentagon Leadership, Commanders of the Combatant Commands, Defense Agency and DoD Field Activity Directors (Aug. 24, 2021), https://perma.cc/CV3JEM3M ("vaccine mandate"). On September 3, 2021, Defendant USAF Secretary Kendall issued a mandate for all active-duty service members of the Air Force, "unless exempted," to be fully vaccinated by November 2, 2021, and for all Reserve service members, "unless exempted," to be fully vaccinated by December 2, 2021 ("Air Force Military Mandate").

process to apply for a vaccine exemption based upon a sincerely held religious belief.

Supposedly, Plaintiff Officer's request was then reviewed by a group the Defendants have coined

the Religious Resolution Team ("RRT")[2] on October 4, 2021. The legitimacy and intent of the

RRT is in doubt, given at least the statements on record by an Air Force commander in an

interview with another airman seeking a religious exemption to vaccines. (EXHIBIT C,

*redacted*) Defendants have stated that they concur that Plaintiff Officer's request "appears to be a

sincerely held religious belief"[3] nonetheless, the request was denied. Defendants advised that the

denial was the result of a balance of the sincerely held religious belief with "the compelling

government interest in preventing a real adverse impact to military readiness and maintaining the

health and safety of our unit's civilian and military members." Plaintiff had never tested positive

for COVID-19, which is not to say that plaintiff had not been asymptomatic, consequentially

developing natural immunity. In any event, the Defendants do not test for natural immunity nor

accept that natural immunity is a basis for exception, contrary to the Defendants' own rules.[4]

   Plaintiff Officer appealed the decision denying his request for a religious accommodation

and received a denial of his religious accommodation appeal on December 2, 2021, from

Defendant Robert I. Miller, Surgeon General of the United States Air Force. (EXHIBIT D,

*redacted*). The specific reason provided was "Specifically, in light of your circumstances, your

---

[2] DAFI52-201  23 JUNE 2021

[3] DAFI 52-201 23 JUNE 2021, the Air Force Instruction with respect to Religious Freedom in the Department of the Air Force defines as follows for Sincerely Held Beliefs—A member's conscience, moral principles, or religious beliefs demonstrated through participation in regular activities associated with the belief, consistency in adherence to the beliefs, tenets and practices, and/or a demeanor and pattern of behavior consistent with the beliefs.

[4] AFI 48-110, which recognizes natural immunity as a basis for exemption from a vaccine mandate ("[g]eneral examples of medical exemptions include…[E]vidence of immunity based on serologic tests, documented infection, or similar circumstances").

present duty assignment requires intermittent to frequent contact with others and is not fully

achievable via telework or with adequate distancing." Defendants did not make an individualized

assessment of Plaintiff Officer's personal situation. Interestingly, no mitigation measures are

followed in Plaintiff Officer's workplace (EXHIBIT E, Declaration).

As of April 19, 2022, the Air Force received 10,905 requests for religious

accommodations to the vaccine requirement/Mandates. Only 46 have been granted.[5] Of the 46

religious exemptions granted, no detail is provided as to whether these service members had a

planned separation or retirement within 180 days, not assigned, deployed or scheduled to

perform duties in an area where specific immunization is indicated, and their commander has not

directed immunization because of overriding mission requirements, thereby making them

otherwise eligible for an administrative exemption to vaccines.[6]

The present state of affairs is dire for the Plaintiff Officer. His otherwise exemplary

career is now littered with a Letter of Reprimand, a Record of Promotion Propriety Action which

removed Plaintiff Officer from the promotion list to major, exposure to criminal liability under

the Uniform Code of Criminal Justice, and denial of his request for a separation from the Air

Force, notwithstanding the advice given from Defendant Rudolf Wilhelm Kuehne that this was

an option. (EXHIBIT D, *redacted*). Plaintiff Officer has no desire to be a vaccine martyr.

Plaintiff Officer wishes only to serve his Country and receive the religious accommodation to

which he has a constitutional right. The rights Service Members swear an Oath to protect and

defend.

---

[5] https://www.af.mil/News/Article-Display/Article/2989918/daf-covid-19-statistics-apr-19-2022/

[6]     See     https://www.health.mil/Military-Health-Topics/Health-Readiness/Immunization-Healthcare/Clinical-Consultation-Services/Exemption-Guidance

ARGUMENT

**I. Standard for Issuing a Preliminary Injunction.**

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *See* Aamer v. Obama, 742 F.3d 1023, 1038 (D.C. Cir. 2014); Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). Plaintiff Officer satisfies all the requirements for granting the requested injunction.

**A. Plaintiff is likely to succeed on the merits that the Mandates violate RFRA and the First Amendment.**

The Vaccine Mandates at issue violate the Religious Freedom Restoration Act ("RFRA") and the First Amendment, for similar reasons. Strict scrutiny applies under RFRA because the Mandates substantially burden Plaintiff's sincere religious objection to the vaccines and likewise applies under the First Amendment because the Mandates treat non-religious medical accommodation requests and clinical-trial participation more favorably than religious accommodation requests.

The Mandates fail strict scrutiny because (1) they are not narrowly tailored to serve a compelling governmental interest, and (2) there are less restrictive means to serve any compelling interest Defendants may have, given plaintiff's natural immunity and willingness to abide by the same protocols as medically exempt clinical-trial-participant service members (notwithstanding the lack of imposition of any such mitigation protocols in effect in plaintiff's work site.

**1. The Vaccine Mandates are subject to strict scrutiny because they impose a substantial burden on Plaintiff Officer's sincerely held religious beliefs.**

6

The Religious Freedom Restoration Act ("RFRA"), 42 U.S. Code § 2000bb et seq., was enacted by the U.S. Congress, under the prime sponsorship of then Representative Rep. Charles E. Schumer [D-NY-9] "to provide very broad protection for religious liberty," going "far beyond what [the Supreme Court] has held is constitutionally required" under the First Amendment. Burwell, 573 U.S. at 693, 706. RFRA prohibits the government from placing a "substantial burden on a person's exercise of religion even if the burden results from a rule of general applicability." Ibid at 695. Under RFRA, when the government substantially burdens a person's exercise of religion, "that person is entitled to an exemption from the rule unless the Government 'demonstrates that application of the burden to the person – (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.'" Id. (quoting 42 U.S.C. § 2000bb-1(b)). As presented in the Complaint and herein, Plaintiff Officer has a genuine, sincerely held religious belief that prohibits the use of vaccines. Note, Plaintiff Officer had noticed the Defendants and the Air Force of conscientious, sincerely held religious objection well before the COVID-19 vaccine availability or mandate (EXHIBIT A). As a consequence of asserting sincerely held religious beliefs, Defendants have issued an ultimatum to Plaintiff Officer, whereby refusal – notwithstanding the reason – has resulted in removal from a promotions list, punitive action, including exposure to a federal criminal conviction, and a dishonorable discharge. All despite Plaintiff Officer's impeccable service record. The RFRA is explicit that Defendants' Vaccine Mandates may not substantially burden religious beliefs, of Plaintiff Officer unless Defendants can show that refusing religious accommodations to the Vaccine Mandates passes strict scrutiny. 42 U.S.C. § 2000bb-1(b).

Plaintiff Officer's claim under the RFRA is ripe for adjudication: "a RFRA claim

7

becomes ripe if the plaintiff faces an "actual or imminent" injury," Navy SEAL 1 v. Biden, 2021

WL 5448970, at *28 (M.D. Fla. Nov. 22, 2021) *citing* Lujan v. Defenders of Wildlife, 504 U.S.

555, 560 (1970).

Plaintiff has a sincere religious objection to being injected with any of the vaccines

mandated by the Defendants. Plaintiff's Declaration (EXHIBIT F) sets forth the basis for the

sincerely held religious belief, in addition to the facts presented in the Complaint and herein. The

Defendants, indeed, nor the courts, may question the reasonableness of a person's sincerely held

religious belief(s). Burwell, 573 U.S. at 724-25; Thomas v. Review Bd., 450 U.S. 707, 715

(1981); *see also* Fulton v. City of Philadelphia, 141 S.Ct. 1868, 1876 (2021) (in the Free

Exercise context, *citing* Thomas). Strict scrutiny is warranted.

A government action (here the Department of Defense, Department of the Air Force, and

the Defendants) imposes a substantial burden on religious belief when it puts "substantial

pressure on an adherent to modify his behavior and to violate his beliefs." Thomas,

450 U.S. at 718 (1981); Singh v. McHugh, 109 F.Supp.3d 72, 87 (D.D.C. 2016) (holding that

elements of the Army's grooming and uniform policies substantially burdened the religious

beliefs of an aspiring cadet). The Supreme Court has recognized that substantial pressure exists

where the government requires "abandoning one of the precepts of [one's] religion in order to

accept work." Sherbert v. Verner, 374 U.S. 398, 404 (1963). The Defendants have and continue

to intentionally violate this proscription. Remarkably much lesser burdens sought to be imposed

on those holding sincere religious beliefs have been found repeatedly to substantially burden

religious beliefs. *See, e.g.*, Holt v. Hobbs, 574 U.S. 352, 361 (2015) (finding that threat of

"serious disciplinary action" as a result of exercise of religion "easily satisfies" standard for

substantial burden); Burwell, 573 U.S. at 720 (finding substantial fines to businesses are a

"substantial burden"); Sherbert, 374 U.S. at 404 (finding "substantial burden" imposed by decision refusing plaintiff unemployment compensation); Singh, 109 F.Supp.3d at 87 (finding exclusion from ROTC a "substantial burden").

The Defendants have granted a *de minimus* number of religious exemptions to the vaccine requirement – done in an opaque reporting that defies determination as to what was the defining difference between the grants and denials of religious exemption requests. Hence, although the Vaccine Mandate/requirement identifies a process for applying for a religious accommodation, enforcement of the Mandates within the Air Force (and military-wide for that matter) demonstrates that no religious accommodation is actually available. Conversely, the Defendants have granted several thousand accommodations for medical and administrative reasons.[7] Because the Vaccine Mandates substantially burden religious practice "effectively without exception," they facially violate RFRA. *See e.g.*, United States v. Friday, 525 F.3d 938, 951 (10th Cir. 2008) (finding a "form of facial challenge" in the claim that "the [challenged] prohibition . . . is effectively without exception, despite the substantial burden this would place on religious practices") (*cited* in Navy SEAL 1 v. Biden, 2021 WL 5448970, at *12 (M.D. Fla. Nov. 22, 2021) ("Although the vaccination requirement contains a religious exemption, the contention that the vaccine requirement is 'effectively without exception' constitutes a 'form of a facial challenge' under Friday.")).

### 2. The Vaccine Mandates are not generally applicable; hence they are subject to strict scrutiny under the First Amendment.

The First Amendment is not offended by government action that is both neutral toward religion and generally applicable. Employment Division v. Smith, 494 U.S. 872, 879-81 (1990).

---

[7] https://www.af.mil/News/Article-Display/Article/2989918/daf-covid-19-statistics-apr-19-2022

However, where, as is the case with the Vaccine Mandates, which is lacking either of those features, a government action that burdens religious exercise must satisfy strict scrutiny. Church of Lukumi Babalu Aye, Inc. v. Hialeah, 508 U.S. 520, 531-32 (1993). In practice, medical exemptions are given favored treatment over religious exemptions, thus demonstrating that the mandate is also not neutral toward religion. "Official action that targets religious conduct for distinctive treatment cannot be shielded by mere compliance with the requirement of facial neutrality." Ibid at 534. In Church of the Lukumi Babalu Aye, Inc., the Supreme Court stated that "[a] law burdening religious practice that is not neutral or not of general application must undergo the most rigorous scrutiny." Id. at 546. A law is not generally applicable if it "prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." Fulton, 141 S.Ct. at 1877 (citing Lukumi, 508 U.S. at 524-28) see also Tandon v. Newsom, 141 S.Ct. 1294, 1296 (2021) ("government regulations are not neutral and generally applicable . . .whenever they treat any comparable secular activity more favorably than religious exercise"). The Air Force accepts that risk from people who seek accommodation for secular reasons but not from people with religious reasons, thus the Vaccine Mandates are not "generally applicable" and must undergo strict scrutiny under Fulton and Lukumi. The Supreme Court in Fulton cited its earlier decisions in Employment Division v. Smith and Sherbert v. Verner, which, together, held that, where a law includes a system of individualized accommodations based on particular circumstances, the government may not refuse to grant accommodations based on religious hardship. Fulton, 141 S.Ct. at 1877; see also Tandon, 141 S.Ct. at 1297 (holding that the government "cannot 'assume the worst when people [exercise religion] but assume the best when people [engage in secular activities]'" (quoting Roberts v. Neace, 958 F.3d 409, 414 (6th Cir. 2020)). Defendants invite service members to apply for

accommodations based on individualized situations, including religious belief.[8] But Defendants have enforced the Vaccine Mandates according to a policy or practice of denying all applications for religious accommodation while granting accommodation based on medical and other circumstances. "The record creates a strong inference that the services are discriminatorily and systematically denying religious exemptions without a meaningful and fair hearing and without the showing required under RFRA (while simultaneously granting medical exemptions and permitting unvaccinated persons to continue in service without adverse consequence). One struggles to imagine a wholesome and lawful explanation for the results evidenced in this record. The military is well aware of the frailty of their arguments in defense of their practices." Navy SEAL 1 v. Biden, 2021 WL 5448970, Doc. 67 at *8 (M.D. Fla. Nov. 22, 2021). A Vaccine Mandate that operates such that commanding officers grant accommodation for other reasons but not on the basis of religious belief is simply not "generally applicable." Fulton, 141 S.Ct. at 1877; see also Tandon, 141 S.Ct. at 1297.

### 3. The Vaccine Mandates fail strict scrutiny under RFRA and the First Amendment.

Strict scrutiny is "the most demanding test known to constitutional law." City of Boerne v. Flores, 521 U.S. 507, 534 (1997). To justify denying accommodations on the basis of religious belief, Defendants must show the denials are narrowly tailored to serve a compelling governmental interest. Roman Catholic Diocese of Brooklyn v. Cuomo, 141 S.Ct. 63, 67 (2020); Gonzales v. O Centro Espírita Beneficente União do Vegetal, 546 U.S. 418, 429 (2006).

### a. Defendants are unlikely to establish that the Mandates are supported by a compelling governmental interest.

---

[8] https://www.af.mil/News/Article-Display/Article/2882742/daf-processes-religious-accommodations-requests/

11

Defendants may not rely on general or "broadly formulated" interests to establish a compelling interest sufficient to satisfy strict scrutiny. The RFRA and the First Amendment require that Defendants establish a compelling interest in denying an accommodation to "particular religious claimants." Navy SEALs v. Biden, No. 4:21-cv-01236-O, 2022 WL 34443 *10 (N.D. Tex. Jan. 3, 2022) (quoting Burwell, 573 U.S. at 726-27). See also Fulton, 141 S. Ct. at 1881; O Centro, 546 U.S. at 430–432; Holt, 574 U.S. at 362-63; "[O]fficials cannot simply utter the magic words 'security and costs' and as a result, receive unlimited deference . . .." Davila v. Gladden, 777 F.3d 1198, 1206 (2015) (citing O Centro, 546 U.S. at 438). In the denial of Plaintiff Officer's request for a religious accommodation, Defendants have utilized a template type response citing as the reason for denial that the Defendants have a "compelling government interest in preventing a real adverse impact to military readiness and maintaining the health and safety of our unit's civilian and military members." (EXHIBIT G). This set of generalized interests is implicated by *every* vaccination in *every* service member. These generalized interests are  insufficient to establish a compelling interest in denying Plaintiff in particular a religious accommodation. Navy SEALs, 2022 WL 34443 at *10-11; Burwell, 573 U.S. at 726-27. The integrity of these purported interests is further eroded as Defendants have afforded accommodations for those who have received medical or other administrative exemptions. Indeed, mitigation measures aimed at reducing transmission of COVID-19 must presumably remain in place regardless of whether or not Plaintiff Officer becomes vaccinated, because of the continued presence in the military of unvaccinated individuals who have qualified for other accommodations, such as medical accommodation or clinical-trial participation. Nothing changes, there is no need for any "special" accommodations that would undermine the Defendants' "compelling interest." See Tandon, 141 S. Ct. at 1296 ("Where government permits

other activities to proceed with precautions, it must show that the religious exercise at issue is more dangerous than those activities when the same precautions are applied. Otherwise, precautions that suffice for other activities suffice for religious exercise too."). Of course, this is all theater as Plaintiff Officer has attested to in his affidavit; his work site does not practice any mitigation protocols. (EXHIBIT F).

The Defendants' delay in imposing a Vaccine Mandate belies any claim of a compelling interest in universal vaccination or in the vaccination of Plaintiff Officer in particular. Vaccines have been available for nearly a year prior to the Covid-19 Vaccine Mandate, and the Office of Legal Counsel of the Department of Justice formally advised in July that public entities could impose vaccination requirements involving those vaccines. U.S. Dep't of Justice, Office of Legal Counsel, "Whether Section 564 of the Food, Drug, and Cosmetic Act Prohibits Entities from Requiring the Use of a Vaccine Subject to an Emergency Use Authorization," July 6, 2021 (slip op.), https://www.justice.gov/olc/file/1415446/download. During the period since vaccines have become available, the immunity of service members, like that of the general population, will presumably have increased with the rise of vaccination rates and infection rates (fostering natural immunity) (*see* 86 Fed. Reg. at 61,604), making the interest in vaccination actually weaker. The delay in implementing a Vaccine Mandate throughout that period has served to countermand Defendants' "compelling interest."

Defendants' *de facto* denial of all religious accommodations, less a *de minimus* grant for distinguishing reasons unknown, Defendants cannot establish a compelling interest such as would be necessary to defeat Plaintiff's facial challenge to Defendants' imposition of the Vaccine Mandates "effectively without exception" for religious belief. *See* Navy Seal 1, 2021 WL 5448970, at *12. By granting thousands of accommodations for medical and other reasons

and providing a blanket exemption for clinical trial participants, Defendants have conceded that whatever interest the Vaccine Mandates serve yields to a slate of other interests. "[I]t is difficult to see how accommodating plaintiff's religious exercise would do greater damage to the…. compelling interests in uniformity, discipline, credibility, unit cohesion, and training than the [] thousands of medical [accommodations]… already granted." Singh, 109 F.Supp.3d at 225. In comparison, the religious accommodation sought by Plaintiff Officer is no more burdensome, and actually the same, than other accommodations that have been granted. Hence, the religious accommodations are no more burdensome than other, granted accommodations, Defendants' interest in denying them cannot be adequately compelling to justify burdening religious exercise. See Fulton, 141 S.Ct. at 1882 ("The City offers no compelling reason why it has a particular interest in denying an exception to CSS while making them available to others."). Where, as here, the government's interest in enforcing a law yields to any interest, it must also yield to the interest of religious liberty. Id.

### b. Defendants are unlikely to establish that the Mandates are the least restrictive means of achieving any interest.

The RFRA requires that the Defendants also show that the Vaccine Mandate is "the least restrictive means of furthering [a] compelling governmental interest." 42 U.S.C. § 2000bb-1(b)(2). The "least restrictive-means standard is exceptionally demanding" in that it requires the government to show "it lacks other means of achieving its desired goal." Burwell, 573 U.S. at 728. "[S]o long as the government can achieve its interests in a manner that does not burden religion, it must do so." Fulton, 141 S. Ct. at 1881, see also Dunn v. Blumstein, 405 U.S. 330, 343 (1972). ("if there are other, reasonable ways to achieve those [interests] with a lesser burden on constitutionally protected activity, [the government] may not choose the way of greater

interference. If it acts at all, it must choose less drastic means.").

Plaintiff Officer has performed his duties honorably prior to, during and since the

pandemic, as well as from the time period vaccines became available. Plaintiff Officer has not

ever tested positive for COVID-19, although Plaintiff Officer may very well have been

asymptomatic and consequently has natural immunity. The Defendants are not testing for natural

immunity notwithstanding that those with natural immunity have no need for a vaccine. *See* 86

Fed. Reg. at 61,604 (the vaccinated and those who "have recovered from infection… are no

longer sources of future infections"); *see also* Missouri v. Biden, No. 4:21-CV-01329-MTS,

2021, WL 5564501, at *8 n.20; Texas v. Becerra, 2021 WL 5964687, at *13; Jones v.

Washington, No. 2:21-CV-12375 2021 WL 6063626, at *1. Defendants have made no

particularized showing as to why they cannot allow Plaintiff Officer to fulfill his responsibilities

using the mitigation methods used throughout the pandemic. The fact those who Defendants

have granted accommodations for medical, administrative, or clinical-trial reasons continue to

work alongside their vaccinated teammates highlights that there are measures not only available

but presumably in practice, that can accommodate Plaintiff Officer. The Defendants have simply

chosen not to do so.

### B. Plaintiff Officer is likely to succeed on the merits on the claim that the Vaccine Mandates violate the Administrative Procedures Act.

The Vaccine Mandates violate the Administrative Procedure Act ("APA"). Under the

APA, a court shall "hold unlawful and set aside" any agency action that is "arbitrary, capricious,

an abuse of discretion, or otherwise not in accordance with law" or "without observance of

procedure required by law." 5 U.S.C. § 706(2)(A), (D). An agency action is arbitrary and

capricious if it violates the agency's own regulations. Missouri, 2021 WL 5564501 at *8. As the

Eastern District of Missouri held, the medical-employee COVID-19 Vaccine Mandate, which

prohibited exemption for natural immunity, was arbitrary and capricious because (among other reasons) the mandate violated HHS/CMS's own regulation, 86 Fed. Reg. at 61,604, which recognizes natural immunity. Id. AFI 48-110, Defendants own regulation, recognizes natural immunity as a basis for exemption from a Vaccine Mandate ("[g]eneral examples of medical exemptions include…[E]vidence of immunity based on serologic tests, documented infection, or similar circumstances"). Yet the Defendants have not tested Plaintiff Officer for natural immunity. Instead, by fiat, Defendant Secretary Kendall's issued an Order on September 3, 2021 which states, "Individuals with previous COVID-19 infection or positive serology are not considered vaccinated and are not exempt." All Air Force Instructions (AFIs) are mandatory. *See, e.g.*, United States v. Adcock, 65 M.J. 18, 24 n.6 (C.A.A.F. 2007) (noting that the U.S. government acknowledges that "all Air Force Instructions are mandatory"). Hence, the Vaccine Mandates wrongfully denied Plaintiff Officer the right to seek a medical exemption under AFI 48-110.

### C. Plaintiff is likely to succeed on the merits that the Mandates violate the Equal Protection and Due Process Clause of the Fifth Amendment

Since the Defendants are agents of the federal government, the equal protection claim, and due process claim arise out of the Fifth Amendment. *See, e.g.,* Bolling v. Sharpe, 347 U.S. 497, 499 (1954). Plaintiff Officer has on two occasions  provided the Defendants notice as to his sincerely held religious beliefs, specifically Plaintiff Officer's objection to the Vaccine Mandates. Plaintiff Officer was not granted an exemption based upon his religious beliefs. Similarly, situated service members who have requested medical or administrative exemptions have been granted accommodations by the Defendants. The constitutional guarantee of equal protection embodies the principle that all persons similarly situated should be treated alike. City of Cleburne v. Cleburne Living Ctr 473 U.S. 432, 439 (1985). This constitutional guarantee

16

applies to administrative as well as legislative acts. Raymond v. Chi. Union Traction Co., 207

U.S. 20, 35-36 (1907).

The Fifth Amendment provides that no one is to "be deprived of life, liberty, or property,

without due process of law." "The fundamental requisite of due process of law is the opportunity

to be heard." Grannis v. Ordean, 234 U.S. 385, 394 (1914). "Procedural due process imposes

constraints on governmental decisions which deprive individuals of "liberty" or "property"

interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."

Mathews v. Eldridge, 424 U.S. 319, 332 (1976). The Defendants have published a procedure for

service members to submit requests for religious accommodations that provides a process for

appeal. The process is one in name only. No consideration is given to Plaintiff Officer's

particular circumstances, the determination of a compelling interest to deny Plaintiff Officer's

request for a religious accommodation, nor whether the Defendants are pursuing the least

restrictive means to achieve the interest stated. Defendants use a template for denial (not

dissimilar from the verbiage used in other branches of the military to issue denials of religious

accommodation requests to the Vaccine Mandates). The Defendants tout the use of a Religious

Resolution Team ("RRT"). But the Plaintiff Officer was not given an opportunity to address this

review body, nor answer any of their concerns prior to a decision/recommendation. To the

Plaintiff Officer's knowledge, those seeking other types of exemptions, such as medical or

administrative, do not have to have their requests evaluated by a special and secret tribunal that

issues a decision/recommendation to his commanding officer (Defendant Rudolf Wilhelm

Kuehne). Plaintiff Officer is entitled to procedural due process because he is exposed to loss of

his job, benefits, as well as exposure to federal criminal penalties. *See* Goldberg v. Kelly, 397

U.S. 254, 262 (1970). "The extent to which procedural due process must be afforded the

recipient is influenced by the extent to which he may be 'condemned to suffer grievous loss,'

Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 168 (1951) (Frankfurter, J.,

concurring), and depends upon whether the recipient's interest in avoiding that loss outweighs

the governmental interest in summary adjudication." Ibid at 263. The RRT process established

by the Department of the Air Force, and followed by the Defendants, is an administrative

procedure held prior to termination and other sanctions, and for which there is a subsequent

review by Defendant Robert I. Miller, the Surgeon General of the United States Air Force.

Resolution of whether the RRT process comports with Fifth Amendment Due Process requires

consideration of three factors: "First, the private interest that will be affected by the official

action; second, the risk of an erroneous deprivation of such interest through the procedures used,

and the probable value, if any, of additional or substitute procedural safeguards; and finally, the

Government's interest, including the function involved and the fiscal and administrative burdens

that the additional or substitute procedural requirement would entail." Matthews v. Eldridge,

424 U.S. at 335.

The private interest that will be affected is the deprivation of constitutional rights under

the RFRA, Free Exercise under the First Amendment includes loss of career, pay and benefits,

exposure to court-martial (possible federal conviction and jail time), discharge with a

characterization of other than Honorable – thereby denying veterans benefits including G.I. Bill,

medical and mental health, access to base resources such as the commissary and base exchanges

(exchanges sell consumer goods and services to service members (active/retired) often at a cost

discounted and tax-free), and other benefits to family members of Plaintiff Officer.

The risk of erroneous deprivation is great for all the reasons stated in the Complaint and

the motion herein. Additionally, a similarly situated Airman prepared a transcript (EXHIBIT C,

*redacted*) from the meeting the Airman had with their commanding officer whereby the commanding officer asserts that the decision to deny religious exemptions has been made: "But they have already stated from a legal standpoint, all the way up to the chief-man-in-charge that his requirement to have a vaccinated force outweighs his ability to accommodate you." (*See* EXHIBIT C). Hence the RRT process is not meant to provide any type of legitimate process.

Lastly, the Government interest, as advertised, is "preventing a real adverse impact to military readiness and maintaining the health and safety of our unit's civilian and military members." (*See* EXHIBIT G). For reasons set forth in the Complaint and herein, the impact of this factor is slight, particularly in light of the fact that Plaintiff Officer's unit engages in no mitigation measures, mingles vaccinated with the unvaccinated, does not test for natural immunity, and plaintiff has continued to fulfill his responsibilities for the entire duration of the pandemic and thereafter without incidence or claim of his (or anyone else's for that matter) unvaccinated status being an adverse impact on readiness or safety. In addition, the fiscal cost would be minimal. The Defendants have already established a process, albeit an imperfect one with a destined result, for review of requests for religious exemptions. All that is needed is guidance and oversight so that any such process, to the extent appropriate given the claims under the RFRA and First Amendment/Free Exercise clause.

### D. Plaintiff has established the remaining factors necessary to warrant emergency relief.

### 1. The Mandates cause irreparable harm.

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" Diocese of Brooklyn, 141 S.Ct. at 67 (*quoting* Elrod v. Burns, 427 U.S. 347, 373 (1976)); Burwell, 723 F.3d 1114, 1146 (10th Cir. 2013). The "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably

constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976). ("[E]stablishing a likely RFRA violation satisfies the irreparable harm factor."); *see also* Dahl v. Bd. of Trustees of W. Michigan Univ.., 2021 WL 4618519 at *6 (6th Cir. 2021), 2021; Scott v. Roberts, 612 F.3d 1279, 1297 (11th Cir. 2010) ("[W]e have held that 'even a temporary infringement of First Amendment rights constitutes a serious and substantial injury.'") (citation omitted). "[F]ocusing exclusively on financial harm misses the mark because the loss of First Amendment freedoms, even for minimal periods of time unquestionably constitutes irreparable injury. . . ." Air Force Officer v. Austin, 2022 U.S. Dist. LEXIS 26660, at *32-33. The RFRA and First Amendment violations inflict damage on Plaintiff Officer and all religious objectors to the Vaccine Mandates that is per se irreparable. As stated in the Complaint and herein, Plaintiff Officer has been notified that he not only will be denied a promotion to major that was to occur on May 1, 2022. Plaintiff Officer implores the Court to act to prevent Plaintiff Officer from being denied such a career milestone pending the resolution of this case. Additionally, the Defendants are moving forward with the discharge of the Plaintiff Officer that is likely to be via court-martial.[9]

"[S]uits for declaratory and injunctive relief against the threatened invasion of a constitutional right do not ordinarily require proof of any injury other than the threatened constitutional deprivation itself." Davis v. District of Columbia, 158 F.3d 1342, 1346, 332 U.S. App. D.C. 436 (D.C. Cir. 1998). Thus, "[a]lthough a plaintiff seeking equitable relief must show a threat of substantial and immediate irreparable injury, a prospective violation of a constitutional right constitutes irreparable injury for these purposes." Id. (internal citation

---

[9] https://katv.com/news/nation-world/after-making-religious-objection-to-covid-vaccine-air-force-officer-facing-court-martial-article15-coronavirus-master-sergeant-vincent-white-christian-trial; https://www.journal-news.com/local/air-force-secretary-vaccine-refusers-could-be-prosecuted/ZHNIJJE44FC4DFVJU7RARYFKPM/;

omitted). <u>Gordon v. Holder</u>, 721 F.3d 638, 653 (D.C. Cir. 2013).

**2. The public interest and balance of harms weigh in favor of an injunction.**

"Proper application of the Constitution . . . serves the public interest [because] it is always in the public interest to prevent a violation of a party's constitutional rights." <u>Dahl</u>, 2021 WL 4618519, at *6; *see also* <u>Scott</u>, 612 F.3d at 1297 ("the public, when the state is a party asserting harm, has no interest in enforcing an unconstitutional law") (citations omitted). Moreover, any supposed harm to Defendants from the imposition of an injunction pales in comparison to the Constitutional and other harms imposed on Plaintiff and other service members without one. An injunction would simply preserve the status quo that applied for many months. Having waited until many months after vaccines were available to impose the Vaccine Mandates, and have taken, in some cases, many months to rule on (that is, flatly and de facto uniformly deny) religious accommodation requests, Defendants cannot argue that their interest in applying it to every service member is urgent.

**II. CONCLUSION**

For the foregoing reasons, this Court should immediately issue a temporary restraining order and/or preliminary injunction. The Court should grant Plaintiff Officer's motion and enter a preliminary injunction enjoining Defendants from (1) enforcing against Plaintiff any order or regulation requiring mandatory vaccination and (2) from instituting or enforcing any adverse or retaliatory action against Plaintiff Officer as a result of, arising from, or in conjunction with plaintiff's religious objection to the vaccination mandate, request for a religious exemption from the Vaccine Mandate, or pursuing this action or any other action for relief under RFRA or the First and Fifth Amendments.

Respectfully submitted,

Date: May 13, 2022

   /s/ Jeremy H. Gonzalez Ibrahim
Jeremy H. Gonzalez Ibrahim
(PA Bar No: PA 53019)
Of Counsel, Poblete Tamargo, LLC
510 King Street, Suite 340
Alexandria, VA 20036
jibrahim@pobletetamargo.com
703−566−3037

   /s/ Jason Poblete____
Jason Poblete
(DC Bar No: 500414)
Global Liberty Alliance
510 King Street, Suite 340
Alexandria, VA 20036
jpoblete@globallibertyalliance.org
703−566−3037

   /s/ Mauricio Tamargo__
Mauricio Tamargo
(DC Bar No: 469839)
*Pending Admission D.D.C.*
Global Liberty Alliance
510 King Street, Suite 340
Alexandria, VA 20036
mtamargo@globallibertyalliance.org
703−566−3037